IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEFFREY E. THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:12-CV-5088-D |
| VS. | § | |
| | § | |
| GREYSTAR MANAGEMENT | § | |
| SERVICES, L.P., et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action alleging disability discrimination, in violation of the Americans with
Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Texas Commission on
Human Rights Act ("TCHRA"), Tex. Labor Code Ann. § 21.001 *et seq.* (West 2006),
defendants Greystar Management Services, L.P. ("Greystar") and GREP General Partner,
LLC ("GREP") move for summary judgment.  The dispositive question presented is whether
plaintiff has produced evidence from which a reasonable trier of fact could find that the
employer's proffered legitimate, nondiscriminatory reason for terminating plaintiff is
pretextual.  Concluding that a reasonable trier of fact could not make this finding, the court
grants the motion and dismisses this action with prejudice by judgment filed today.

I

Greystar manages multifamily housing properties throughout the country.  Prior to his
termination, plaintiff Jeffrey Thomas ("Thomas") was a Regional Director of Capital Project

Services for Greystar.[1]  One of his duties was to travel to Greystar-owned properties and inspect their physical condition.  During his eight years with the company, Thomas won several awards for his performance and never received a reprimand prior to his termination.

In March 2011 Thomas suffered a stroke.  He was hospitalized for 16 days, temporarily lost the ability to walk, exhibited limited motor functioning, and suffered significant pain.  After his initial hospitalization, he was transferred to a rehabilitation hospital for approximately two weeks.  He was released from the rehabilitation hospital in April 2011, but he continued regular rehabilitation and physical therapy.  Approximately three months following his stroke, Thomas received permission from his doctor to return to work, subject to certain limitations on his physical activity.

In June 2011 Thomas returned to work at Greystar, but his ability to walk was substantially limited.  Although Thomas could walk unassisted, he could not walk more than 50 yards without stopping, he noticeably limped, he had difficulty climbing in and out of vehicles, and he had trouble climbing stairs.  Greystar reduced his workload by taking assignments away from him.  It also suggested that he use a golf cart during property inspections, and it limited the scope of his inspections to avoid the need for Thomas to climb ladders or stairs or to inspect objects near or on the ground.

---

[1]In deciding defendants' summary judgment motion, the court views the evidence in the light most favorable to Thomas as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

In July 2011 Greystar asked Thomas to travel to a property located in Tulsa, Oklahoma to perform an inspection.  Thomas initially told his supervisor, Kenneth Close ("Close"), that he could not make the long drive to Tulsa.  Close responded by instructing Thomas to ride with a contractor, Element Enterprise ("Element").  Thomas traveled with Element to and from Tulsa, without incident.  Because he rode with Element and did not drive himself, he did not incur any expenses for gasoline or the use of his personal vehicle.

In August 2011 Thomas prepared an expense reimbursement report for his travel to and from Tulsa.  On the report, he stated that he traveled 244 miles from Dallas to Tulsa on July 14, 2011, and 244 miles from Tulsa to Dallas on the same day.  By virtue of submitting the report, Thomas was representing to Greystar that he had incurred this mileage in his personal vehicle and was seeking reimbursement at a rate of \$0.50 per mile, for a total of \$244.00.  He signed the form and submitted it to the office administrator.  It is undisputed that Thomas was not entitled to reimbursement for this expense under company policy, because he did not drive his personal vehicle but instead shared the ride with Element.

Close reviewed Thomas' expense reimbursement report and noticed that Thomas had requested reimbursement for a trip that he thought Thomas had shared with the contractor. Close contacted Element, who confirmed that Thomas had in fact traveled with Element and that Thomas had not incurred any personal expense.  Close was not sure how to handle the situation, so he contacted Dan Rolewski ("Rolewski"), who had been Thomas' supervisor before he suffered his stroke.  Rolewski told Close he would get back to him, and then contacted Tony Wheeler ("Wheeler"), the Director of Greystar's Human Resources

- 3 -

Department.  In reviewing the situation, Wheeler and Rolewski determined that it appeared that Thomas had submitted a false expense reimbursement report and that, absent a satisfactory explanation from Thomas, he would be terminated.  Wheeler then instructed Close to ask Thomas about the expense reimbursement report and to clarify why the error occurred.  When Close asked Thomas about the report, Thomas admitted that he had traveled with Element and said that the error on the report was a "mistake."

Close reported to Rolewski and Wheeler the substance of his conversation with Thomas.  Wheeler was aware of only one other situation where an employee had appeared to submit an expense reimbursement report for travel expenses not actually incurred.  Darin Montgomery ("Montgomery"), who had worked in Greystar's Construction Department and had no physical disability of which Wheeler was aware, had been discharged in March 2009 after he was unable to offer any explanation for submitting an expense reimbursement form for air travel that he did not undertake.  Wheeler advised Rolewski that Thomas should be discharged for violating company policy.

On September 7, 2011 Greystar terminated Thomas over the telephone.  The justification given by Greystar was that Thomas had submitted a mileage reimbursement request for a work-related trip for which he was not entitled to reimbursement.  Thomas subsequently filed this lawsuit, alleging claims for disability discrimination under the ADA and the TCHRA.[2]  Defendants move for summary judgment, contending that Thomas cannot

---

[2]GREP never employed Thomas.

establish a prima facie case of disability discrimination, and that, even if he can, he has failed to create a genuine issue of material fact regarding whether Greystar's proffered legitimate, nondiscriminatory reason for terminating him is pretextual.  Thomas opposes the motion.

II

Because Thomas will bear the burden of proof on his claim for disability discrimination, defendants can meet their summary judgment obligation by pointing the court to the absence of admissible evidence to support the claim in question.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once defendants do so, Thomas must go beyond his pleadings and designate specific facts showing that there is a genuine issue for trial.  *Id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable trier of fact could return a verdict in Thomas' favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thomas' failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory if Thomas fails to meet this burden.  *Little*, 37 F.3d at 1076.

III

The ADA[3] provides, in pertinent part, that "[n]o covered entity shall discriminate

---

[3]Although Thomas has brought his claim under both the ADA and the TCHRA, the court for convenience will refer only to the claim brought under the ADA because substantially the same law applies to both claims. *See, e.g., Gober v. Frankel Family Trust*, 537 Fed. Appx. 518, 520 (5th Cir. 2013) (per curiam).  Although the inquiries under the

against a qualified individual on the basis of disability in regard to . . . the . . . discharge of [an] employee[]." 42 U.S.C. § 12112(a). To prevail on his claim, Thomas must present direct or circumstantial evidence that his disability was a motivating factor for Greystar's adverse employment action. *See, e.g., Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999). "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)) (age discrimination case). "If an inference is required for the evidence to be probative as to [defendant's] discriminatory animus in firing [plaintiff], the evidence is circumstantial, not direct." *Sandstad*, 309 F.3d at 897-98.

When a plaintiff does not present direct evidence of discrimination, the court applies the modified *McDonnell Douglas* approach. *Seaman*, 179 F.3d at 300 (holding that *McDonnell Douglas* framework, which is used in cases brought under Title VII of the Civil

---

ADA and TCHRA are identical under the first and second stages of the modified *McDonnell Douglas* framework, they are different at the third stage. *See, e.g., Mathis v. BDO USA, LLP*, 2014 WL 975706, at *3 (S.D. Tex. Mar. 12, 2014). Under the ADA, Thomas must produce evidence from which a reasonable trier of fact could find that Greystar's proffered legitimate, nondiscriminatory reason is a pretext for discrimination. *See, e.g., Owens v. Calhoun Cnty. Sch. Dist.*, 546 Fed. Appx. 445, 449 (5th Cir. 2013) (per curiam). But the TCHRA imposes a lower standard because Thomas can survive summary judgment by producing evidence from which a reasonable trier of fact could find that, even if Greystar's reason is true, another motivating factor was his disability. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001) ("The plain meaning of this statute establishes 'a motivating factor' as the plaintiff's standard of causation in a TCHRA unlawful employment practice claim, regardless of how many factors influenced the employment decision."). The difference between these two standards is immaterial in this case because, as explained below, Thomas cannot satisfy even the lower standard under the TCHRA.

- 6 -

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, applies to ADA cases when only circumstantial evidence of discrimination is offered). As modified, the *McDonnell Douglas* framework consists of three stages. First, Thomas must establish a prima facie case of discrimination, which "creates a presumption that [Greystar] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). To establish a prima facie case of discrimination based on a disability under the ADA, Thomas must show that (1) he suffers from a disability or is regarded as disabled; (2) he is qualified for the job despite the disability; (3) he was subject to an adverse employment action; and (4) he was replaced by a non-disabled person or treated less favorably than non-disabled employees. *See, e.g., Milton v. Tex. Dep't of Crim. Justice*, 707 F.3d 570, 573 (5th Cir. 2013) (citing *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995)).

Second, if Thomas establishes a prima facie case, the burden shifts to Greystar to articulate a legitimate, nondiscriminatory reason for the employment action taken against him. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). Greystar's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West*, 330 F.3d at 385. Greystar's "burden requires the production of admissible evidence in support of its nondiscriminatory reasons." *Hervey v. Miss. Dep't of Educ.*, 404 Fed. Appx. 865, 868 (5th Cir. 2010) (per curiam) (race discrimination case) (citing *Burdine*, 450 U.S. at 255).

Third, if Greystar meets its production burden, Thomas must show that the legitimate reason proffered by Greystar "[is] not its true reason[], but [was] a pretext for

discrimination."[4]  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)

(quoting *Burdine*, 450 U.S. at 253); *see also EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d

606, 615 (5th Cir. 2009).  Therefore, to survive summary judgment, Thomas must "offer

sufficient evidence to create a genuine issue of material fact . . . that [Greystar's] reason is

not true, but is instead a pretext for discrimination."  *Rachid v. Jack In The Box, Inc.*, 376

F.3d 305, 312 (5th Cir. 2004) (citation and internal quotation marks omitted) (describing

standard in context of age discrimination case).

These three steps constitute the *McDonnell Douglas* framework.  "Although

intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate

burden of persuading the trier of fact that the defendant intentionally discriminated against

the plaintiff remains at all times with the plaintiff.'"  *Reeves*, 530 U.S. at 143 (quoting

*Burdine*, 450 U.S. at 253).

IV

Defendants move for summary judgment on Thomas' disability discrimination claim,

contending that Thomas cannot establish a prima facie case of discrimination.  Thomas

---

[4]As this court has previously observed, it is unclear whether the mixed-motive alternative to rebutting a defendant-employer's proffered legitimate reason is still viable in ADA discrimination cases after the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175 (2009) (holding that mixed-motives theory is unavailable under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*).  *See Bennett v. Dall. Indep. Sch. Dist.*, 936 F.Supp.2d 767, 776 n.6 (N.D. Tex. 2013) (Fitzwater, C.J.).  The court need not decide whether the mixed-motive theory is available here, because Thomas has only attempted to show that Greystar's proffered legitimate, nondiscriminatory reason is pretextual.

responds that he has established a prima facie case of disability discrimination because he was actually disabled within the meaning of the ADA, or, in the alternative, because Greystar perceived him to be disabled after he suffered his stroke and returned to work. Because the court ultimately concludes that Thomas has failed to create a genuine issue of material fact regarding pretext, the court will assume *arguendo* that Thomas has established a prima facie case of disability discrimination under the ADA, and it will proceed to the second and third stages of the burden-shifting framework.

V

Defendants have introduced evidence that Greystar discharged Thomas because he submitted a false expense reimbursement request—i.e., an expense reimbursement request that contained an error that he could not adequately explain—in violation of company policy. Terminating an employee for submitting a false expense reimbursement request is a legitimate, nondiscriminatory reason for discharging him. *See, e.g., Pittman v. Gen. Nutrition Corp.*, 515 F.Supp.2d 721, 738 (S.D. Tex. 2007) (holding that employer articulated legitimate, nondiscriminatory reason for plaintiff's termination where employer presented evidence that plaintiff falsified an expense reimbursement request, in violation of company policy, and could not explain it). And defendants have produced admissible evidence in support of this reason. Accordingly, the court holds that defendants have met their burden to produce evidence of Greystar's legitimate, nondiscriminatory reason for Thomas' termination.

VI

The court now considers whether Thomas has produced evidence that would enable a reasonable trier of fact to find that Greystar's proffered legitimate, nondiscriminatory reason is pretextual.

A

Because defendants have met their burden of production, Thomas must create a genuine issue of material fact under one of the alternative methods of proof.[5]  Thomas attempts to show that Greystar's justification is pretextual; he makes no attempt to establish that Greystar acted with mixed motives.  The court will therefore consider his arguments under the pretext alternative.  *See, e.g., Siddiqui v. AutoZone W., Inc.*, 731 F.Supp.2d 639, 651 (N.D. Tex. 2010) (Fitzwater, C.J.) (considering plaintiff's race discrimination claim only under pretext alternative because plaintiff contended that defendant's stated justification for termination was pretextual and did not clearly contend that defendant had mixed motives).  To establish pretext, Thomas must show that Greystar's "proffered explanation is false or unworthy of credence." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (race discrimination case) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)) (citation and internal quotation marks omitted).  At the summary judgment stage, Thomas' burden is to raise a genuine issue of material fact regarding pretext.  *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *6 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) ("Because

---

[5]The court assumes *arguendo* that the mixed-motive alternative is available under the ADA. *See supra* note 4.

[defendant] has satisfied its burden to produce a legitimate, nondiscriminatory reason for [plaintiff]'s discharge, in order for [plaintiff] to survive summary judgment, he must create a genuine and material fact issue regarding the ultimate question of discrimination.").  And to carry this burden, Thomas "must produce substantial evidence of pretext."  *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001) (race discrimination case); *see also id.* at 403 n.3.

B

Thomas attempts to show that Greystar's proffered explanation is unworthy of credence because Thomas was an otherwise exemplary and trustworthy employee.  He presents evidence that, when confronted by Close about the expense reimbursement issue, he "immediately acknowledged" the error, calling it a "mistake."  Thomas avers that the mistake could have been caused by his copying and pasting the mileage from an old Excel spreadsheet that he had used to calculate expenses for a prior trip to Tulsa.[6]  And he argues that it is simply too incredible to believe that he purposely submitted a false expense reimbursement request to Close when he knew beforehand that Close was aware that he was going to share a ride with Element and would not be entitled to mileage reimbursement.  Thomas contends that the facts and circumstances of his termination, when viewed in the

---

[6]Thomas also testified during his deposition that his mistake could have been caused by an episode of hypoglycemia.  But he does not rely on this evidence in his summary judgment response, and, even if he did, it would not create a genuine issue of material fact regarding pretext because Thomas admitted during his deposition that he did not offer the hypoglycemic-episode explanation to Close when confronted about the issue.

light most favorable to him, create a genuine issue of material fact on the issue of pretext.

The court holds that Thomas has failed to produce evidence that would enable a reasonable trier of fact to find that Greystar's proffered reason for terminating Thomas is pretextual.  It is undisputed that, when Close reviewed Thomas' expense reimbursement report and discovered the discrepancy, he consulted with Rolewski and Wheeler.  It is also undisputed that Wheeler, who made the recommendation to discharge Thomas, only knew of one other situation where an employee had submitted an erroneous expense reimbursement report without an adequate explanation, and that the employee in that situation had been terminated.  Finally, it is undisputed that, when Close confronted Thomas about the expense reimbursement report, Thomas admitted that the request was erroneous and acknowledged that it was a mistake, but did not otherwise explain why he had made the error.

Under these circumstances, Thomas has failed to rebut Greystar's proffered legitimate, nondiscriminatory reason.  Thomas did not offer the copy-and-paste explanation for the error at the time Close confronted him.  In fact, he did not offer any explanation, and merely acknowledged that he had made a mistake.  Thomas also does not dispute that Montgomery, who had no actual or perceived disability, was discharged for a similar violation of company policy.  Thomas' after-the-fact explanation and his subjective belief that the expense report error did not warrant termination do not create a genuine issue of material fact regarding pretext because, even assuming that Greystar misjudged Thomas' conduct and that it should have evaluated the situation as has Thomas, "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate,

- 12 -

non-discriminatory reason.  We do not try in court the validity of good faith beliefs as to an employee's competence.  Motive is the issue." *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (age discrimination case); *see also Jackson v. Watkins*, 619 F.3d 463, 468 n.5 (5th Cir. 2010) (per curiam) (affirming this court's opinion below in Title VII case) ("But it is not our place to second-guess the business decisions of an employer, so long as those decisions are not the result of discrimination."); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (Title VII case) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."). Viewing the evidence in the light most favorable to Thomas and drawing all reasonable inferences in his favor, a reasonable trier of fact could not find from the evidence in the summary judgment record that Greystar's proffered legitimate, nondiscriminatory reason for terminating Thomas is pretextual.[7]  A reasonable trier of fact could only find that, after it became aware of the erroneous expense reimbursement request, Greystar acted based on company policy, and consistently with how it believed a similar situation had been previously handled involving an employee who was neither disabled nor perceived to be disabled.  Consequently, defendants are entitled to summary judgment dismissing Thomas' disability discrimination claim.

_____

[7]Thomas does not offer any other evidence that his disability was a motivating factor for Greystar's decision to terminate him, nor does he argue that the result should be different under the state-law standard.  *See supra* note 3.  Accordingly, defendants are entitled to summary judgment dismissing Thomas' disability discrimination claim under the TCHRA because he has failed to present evidence from which a reasonable trier of fact could find that, even if Greystar's reason was true, another motivating factor was Thomas' disability.

*     *     *

For the reasons explained, defendants' motion for summary judgment is granted, and this action is dismissed with prejudice by judgment filed today.

**SO ORDERED.**

June 4, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE